May it please the Court, my name is Anders Johnson. I'm representing the petitioner, Mei-Chi Yu. And if you could keep your voice up, I have a little trouble hearing. Thank you. I'm always guilty of doing that. I apologize. And this is basically, this is a case about a woman who entered the United States at 12, stayed for four months, returned with her parents to Hong Kong, came back ten years later. And there are several issues in this case. Some of them, I think, are quite dispositive, and some are not so much. The first issue is whether or not, after ten years of being in Hong Kong, the petitioner in fact abandoned her legal residence. And the Board of Immigration found that, in fact, she had, based not only on her parents, her parents' situation, where they, in fact, never returned to the United States except the father came five times for brief visits. And whether or not the petitioner herself, having not come to the United States again until she was 21, far past the date that she was emancipated, had any intention of returning to the, showing any intention of returning to the United States. I think it can be conceded that parents had no intention of returning to the United States permanently. The father had a job in Hong Kong that he maintained. The mother was too ill to return and subsequently deceased. And so I think the actions of the parents, the Board was correct that, in fact, that is abandonment on part of the parents. And so does that intent get imputed to your client up until the age of majority? I believe it does. And I think the Board has been consistent with that over the years in terms of what the parents did. Is that fair? No. But the problem, then, we get is the actions of the petitioner after she turns 18. So you think that's the, that window, is it between 18 and 21 or 18 and 22, that's the window that we need to focus on to determine? At this point, yes. I think for terms of the petitioner, the question is whether or not the court is willing to accept the petitioner's statement that she, in fact, thought she wasn't emancipated until she was 21. And remind me, why is that significant? Is it because she didn't think she could leave Hong Kong? Correct. That, yeah, she believed that she, in fact, as wrong as she may have been at that point, that is what her parents told her, that she, in fact, was not emancipated until she was 21. Obviously, you know, other issues come into play in terms of her mother's health. The petitioner also ended up having a child during this period of time. But at the point at which she turned 21, she, in effect, gave away the custody of her child to the father and left for the United States. So I think the court would have to, in terms of the precedence, I think if the court were to say she was emancipated at 18, then I think our argument that she, in fact, was diligent would not be accurate. So it would have to be the court accepting the fact that her belief that she wasn't emancipated until she was 21 would be the standard to look at. Do we have anything in the record that tells us what the age of majority is in Hong Kong? Not in the record. I know it's cited in the government's brief, but there was nothing ever entered into the record below in terms of what the age of emancipation is in Hong Kong. But that would be the way in terms of deciding whether or not she, in fact, abandoned her intention, abandoned her legal residence. But to be honest, Your Honor, I think that we would concede that it's probably stretching a bit in terms of the 21 years of age. Our concern is whether or not she would qualify for a waiver. And I think that is the issue that, unfortunately, the Board of Immigration did not really address very effectively. And we believe that she, in fact, does qualify to ask for a waiver. But before you get to the waiver issue, because I just question whether we even have jurisdiction to review any aspect of that decision. But so I just want to understand the emancipation point. Sure. It's that your position is that your client, she believed, perhaps erroneously, that the age of emancipation was 21 in Hong Kong. But I guess I don't – does that mean that she thought she couldn't leave the country? I don't even understand why do those two things go hand in hand. I don't know that it necessarily means she couldn't leave the country, but in terms of what the Court looks at is after you've looked at the parent's actions or intentions, at the point of emancipation, the Court looks to the Petitioner's, the child's, intentions. The question is do you look at it from 18 or do you look at it from 21, which is what she thought the age of emancipation was. And if you look at it from what her perspective was, what she believed it to be, then obviously after that age she moved quite quickly to return to the United States. Okay. That helps. So I guess the task of the Court is whether you're willing to do that. Yeah. If you don't and look at the actual true age of emancipation, which is 18, then I would concede that she obviously didn't move very quickly. Yeah, I agree. But so on the waiver, the 212k waiver issue, I guess I read the BIA's decision as saying we're going to assume that your client is eligible, but just as a pure matter of discretion, we're not going to, we don't think she's entitled to the relief. I thought that it was quite clear that we do not have jurisdiction to review those purely discretionary determinations. In terms of what the Board decided discretion, I mean, they decided she didn't qualify for a waiver, but they never really discussed whether she could even apply for a waiver. Unfortunately, the Board does not address it at all. They just simply say, well, you know, maybe if she qualifies to apply for the waiver, you know, we're just going to find that she didn't have it. They never really even discussed whether she could, in fact, apply for the waiver. Well, I'm reading the last full paragraph of the Board. The Board writes, the Respondent has not established a basis for granting her a waiver under 212k. Okay. But then the Board goes on to say, to the extent that the Respondent is eligible to seek a waiver under 212k, we conclude that the Respondent has not shown she merits a favorable grant of discretion. So I see kind of a belt and suspenders, two ways of getting the result. The second one is, assuming that she is legally eligible, we deny in the exercise of our discretion, and that exercise of discretion, I don't think we have a review over that. I don't think we have the right to review that. Well, I think that I would submit that the Board didn't, and we're talking about the last paragraph of basically a several-page decision, that they really don't get, I don't think they really did a very good job of assessing all of the factors that would be taken into account with regard to a discretionary decision to deny her a waiver. In fact, I think that their only throw-out line was that she had a daughter in Hong Kong, and therefore we're not going to grant. I don't think they took into account any other factors, certainly not anything that's discernible from their decision. And I think she's entitled to have a better analysis of why, in fact, or what she should, in fact, submit. Now, we do have some case law in which we say we don't have the authority to review an exercise of discretion in a case like this, but we do have authority to review whether or not the Board has looked at the factors. And so you're saying, well, they looked only at the factor of the daughter being in Hong Kong. What other factors should the Board have looked at, in your view? If they were to look at the statute itself, they should have looked at whether or not she should have made a reasonable inquiry as to whether or not she had a valid entry permit or a valid document to enter the United States. In addition, does she have any significant ties in the United States? And they didn't do that. They don't they didn't, on the first point, they didn't do it at all. And the second one, they just simply cited one factor, which I would assume is in her favor, actually. So I don't think the Board gave it its. And what would those factors be? She has a brother in the United States. She has a brother, an aunt, an uncle, and cousins in the United States who are U.S. citizens. In China, she has basically her elderly father, and she has a daughter that she abandoned and gave up when she left for the United States. In fact, the immigration judge found they were equal ties, but then went on to deny. And so it's certainly a fact-based situation, but I think she should have the opportunity to submit what she believes are her significant ties in the United States. Okay. Let's hear from the government. We've taken you to the end of your time, but we will give you a chance to respond. Thank you. Good morning, Your Honors. May it please the Court. I'm Carmel Morgan on behalf of the Respondent, the U.S. Attorney General. It appears that the Petitioner has conceded that the parent's intention during the Petitioner's minority was not to return to the U.S. So, in other words, the Petitioner's parents had no continuous uninterrupted intent to reenter the United States without another type of entry document. I would argue that it's potentially dispositive, in fact, of the entire case, given that you need to have a continuous uninterrupted intent. And under this Court's decision in Cauchemar, you appropriately look to the parent's intent during the child's minority. The fact that the parents never had the intent to return may be dispositive of the case. But at any rate, in addition to the parents lacking that intent, there is no evidence in the record of actions that the Petitioner took that would signify that she had an intent to return to the United States for that continuous uninterrupted period after she reached the age of majority. I don't think it matters, particularly in this case, whether we look at age 18 or age 21. In Cauchemar, this Court did consider the age to be 18. That case dealt with Iran. But I don't think there's any evidence that you look at the age of majority in the foreign country versus the United States. I mean, that's not an issue that's been decided. Even if you consider the Petitioner's argument, she still didn't take any actions after age 21 that would show her intent to return to the United States as soon as possible to resume her residency here. Kennedy. But how old was she when she did come back? She was age 22. So that's pretty fast. Pretty fast. But I would argue not fast enough when it's not coupled with actions that would show anything other than her professed intent. When an alien with legal permanent residence status leaves the country, presumably let's say it's just a two-week absence or something, they don't need a visa or anything to come back, do they? Isn't the green card enough or what? That's correct, Your Honor. For a short, temporary visit, you need nothing else. Okay. Then how do they – when do they become inadmissible? Because the charge is sort of you came here without looking into your inadmissibility and applying for a waiver overseas or something like that. How do you know when you become inadmissible? I mean, is it just a running of time or is it your own intent that makes it? And then how does the government know what the intent was? It seems to me that a notice requirement is imposed with a very, very vague standard of when it should apply. If you look carefully at the immigration law, there's a couple of sections that certainly give clues as to how long you might safely reside abroad before returning without a document. The 8 CFR 211.A2 says if you've been outside of the United States for more than a year, you can't rely solely on the green card for readmission. So that year period is important to look at. But also, you've got a significant body of case law from this Court and the Board that discusses factors, and the duration of your residence abroad is something that's going to be weighed. One of those, I think, mentioned more than nine months or something like that. There is a provision in the INA that's 101.A13.C that says legal permanent residents are not regarded as seeking admission unless they've either, one, abandoned their legal permanent resident status, or two, have been absent in excess of 180 days, which I guess is six months. If we were to conclude that the BIA is correct in holding that she abandoned, does that necessarily mean that she's ineligible for 212.K, or is she still eligible for 212.K? That is a good question, and it's one that I don't think the agency answered, because they didn't make a decision based on eligibility. They assumed that she was eligible, and then went forward and made a discretionary determination that they did not feel she merited the waiver. Well, maybe that's what that first sentence means. I read the first sentence of that last paragraph to be a holding by the BIA that she was statutorily ineligible, but maybe I'm misreading it. Well, I think arguably you could look at that paragraph dealing with the waiver. They make a statement that she didn't exercise due diligence in determining whether she was inadmissible. Okay. So maybe they haven't decided. I'll take your word, then, that the government did not decide whether she's statutorily eligible or ineligible for the 212K. So let's then get to the discretion. I think you probably are aware of the case law that we have that says, while the discretionary determination is not reviewable by us, whether they looked at the factors in exercising our discretion is reviewable. Am I accurately stating our case law in your view? I think that's pretty fair. Well, so there are lots of factors that we just heard, and the only one they listed is she's got a child back in, she's got a daughter back in Hong Kong. I'm not sure what all those other factors are. I think when you asked Petitioner's counsel, he had difficulty articulating those. No, he gave me quite a lot. She's got a brother, she's got an aunt, she's got relatives. I mean, there are all kinds of things that I think would be considered as factors in the exercise of discretion that are not mentioned here. I don't think it's the Board's duty to mention every possible factor that it considered, and I don't think the Court can decide that the Board ignored factors that it didn't articulate. It was very clear that it made a discretionary determination and that that determination, both the immigration judge and the Board, pointed to the factor of the daughter being a close tie to Hong Kong. But the discretionary nature of the decision was dependent on the agency's determination that the limited ties she had in the United States were not enough. They did recognize in the immigration judge's decision she does have a brother, but those other relatives not being immediate relatives probably didn't merit discussion, possibly. I mean, I have to say our case law in which we say we get to review whether the Board looked at the appropriate factors in exercising discretion is kind of at the edge of the law. I'm not sure how comfortable I am with our case law on that point. I'm not sure how I'm comfortable. And I'll also say I'm not entirely comfortable with requiring the BIA or the IJ in the exercise of discretion to enumerate every possible factor. And the other thing that's quite striking here is that only one factor is mentioned, and it's the one factor that I think is the least favorable to her, with a certain view of motherhood. I mean, she has abandoned the child. She has given custody to the father. So in her view, that's not a tie at all. I mean, this is the BIA saying a good mother would have some connection to the child. I'm not sure that's really what the Board was intending to say. Nobody disputes. It may not be what it intended to say. I confess I've sharpened the pencil a little bit. The Respondent's minor daughter remains in Hong Kong. That's what they say. And that's clearly a factor that they are relying on to say, well, we're not going to let you stay here. Yes. It was a factor that the immigration judge emphasized as well. But the immigration judge pointed out her father and her mother and Petitioner as well spent virtually the entirety of their lives in Hong Kong. So their ties in Hong Kong were indeed very, very strong, even if you don't look at the daughter. So I think it was really weighing the strength of the relative ties. And given the great duration of time she spent in her home country, they just didn't feel that she merited discretion. And it's the government's argument that since that is a discretionary determination, the court doesn't have jurisdiction to review it. It might be a different case. If we had a specific statute or case law that set out A, B, C, D, E, F, G, you must consider these points. But I'm not familiar with one for a 212K waiver that enumerates exactly what points you have to discuss. Therefore, I think in this case, articulating some reason is probably enough to insulate it from the court's review. If there are no further questions, the government asks that you dismiss the petition for review with regard to the 212K waiver and deny the petition with regard to the abandonment of legal permanent resident status. Thank you. Roberts. Why don't you put a minute on the clock, please? I think that what the petition would ask the Court to do is to allow the excuse me, Your Honor, I apologize, is to remand this matter in order for the board to make I think first make the decision or decide the issue of whether or not the petitioner qualifies to ask for a waiver, and then take each of the elements of 212K and make a determination as to whether or not she, in fact, qualifies for a waiver and should, under the discretion, have a waiver, and give us more than simply a negative factor to say that it's a positive factor. Now, I think that's just the – I think that's what's expected from the board in the fact that we didn't get any of that.  Thank you. Thank you. Thank you. Thank you both sides for their arguments. The case of Meechi Yu v. Holder is now submitted for decision.
judges: Canby, Fletcher, Watford